UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOE GLEASON, | Case No. 3:13-cv-231 |
| Plaintiff, | District Judge Thomas M. Rose |
| vs. | Magistrate Judge Michael J. Newman |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI") for the closed period of March 11, 2009 through October 25, 2010. This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's opposition to Plaintiff's Statement of Errors (doc. 11), Plaintiff's reply (doc. 12), the administrative record (doc. 6),[2] and the record as a whole.

I.

A.  **Procedural History**

Plaintiff protectively filed for DIB and SSI on December 4, 2008, alleging a disability onset date of July 1, 2008. PageID 256-67. Plaintiff later amended his alleged onset date to

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

March 11, 2009.  PageID 398.  Plaintiff suffers from a number of impairments including, among others, morbid obesity and resulting respiratory insufficiency; chronic obstructive pulmonary disease ("COPD"); meniscal tear of the left knee; mild osteoarthritis of both knees; sleep apnea; depressive disorder; adjustment disorder; obsessive compulsive disorder; and panic disorder with agoraphobia.  PageID 77.

After initial denial of his claims, Plaintiff received a hearing before ALJ Amelia G. Lombardo on January 13, 2011, and a follow up hearing on November 29, 2011.  PageID 98-141.  ALJ Lombardo issued a written decision on December 30, 2011 finding Plaintiff not "disabled" before October 25, 2010, but disabled from that date forward.  PageID 74-87.  Specifically, ALJ Lombardo's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010;

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3. Since the alleged onset date of disability, July 1, 2008, the claimant has the following severe impairments: morbid obesity and resulting respiratory insufficiency; COPD; meniscal tear of the left knee; mild osteoarthritis of both knees; sleep apnea; depressive disorder; adjustment disorder; obsessive compulsive disorder; panic disorder with agoraphobia (20 CFR 404.1520(c) and 416.920(c));

4. Since the alleged onset date of disability, July 1, 2008, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the undersigned finds that prior to October 25, 2010, the date the claimant became disabled, the claimant had the residual functional capacity ["RFC"] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) subject to the following limitations: unskilled work; only low stress work with no assembly line production quotas and work that is not fast paced;

6. After careful consideration of the entire record, the undersigned finds that beginning on October 25, 2010, the claimant lacks the [RFC] to perform even sedentary work as defined in 20 CFR 404.1567(a) and 20 CFR 416.967(a) on a regular and continuing basis;

7. Since July 1, 2008, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

8. Prior to the established disability onset date, the claimant was a younger individual age 18-44. The claimant's age category has not changed since the established disability onset date (20 CFR 404.1563 and 416.963);

9. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964);

10. Prior to October 25, 2010, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on October 25, 2010, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

11. Prior to October 25, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed;

12. Beginning on October 25, 2010, considering the claimant's age, education, work experience, and [RFC], there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966);

13. The claimant was not disabled prior to October 25, 2010, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)); [and]

14. The claimant's substance use disorder is not a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935).

PageID 73-87.

Thereafter, the Appeals Council denied Plaintiff's request for review, making ALJ Lombardo's non-disability finding the final administrative decision of the Commissioner.

PageID 55-60. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

### B. Evidence of Record

In her decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 74-87. Plaintiff, in his Statement of Errors, also sets forth an extensive summary of the medical evidence. Doc. 8 at PageID 1119-26. The Commissioner's response to Plaintiff's Statement of Errors also contains a summary of relevant medical evidence. Doc. 11 at PageID 1145-51. Accordingly, except as otherwise stated in this Report and Recommendation, the undersigned incorporates the ALJ's recitation of the evidence as well as the parties' separate summaries of the evidentiary record. Where applicable, the Court will identify the medical evidence relevant to this decision.

### II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g) and 1383(c)(3);[3] *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When

---

[3] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

    4.      Considering the claimant's RFC, can he or she perform his or her past relevant work?

    5.      Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In this case, the ALJ determined, as noted, that Plaintiff was disabled beginning on October 25, 2010. On appeal, Plaintiff contends that he was disabled beginning on or about March 11, 2009 and that the ALJ erroneously refused to find him disabled as of that earlier date. Thus, as the Commissioner explains, the focus of this appeal "is whether Plaintiff was disabled during the approximately 19 month period between March 11, 2009 through October 25, 2010." Doc. 11 at PageID 1145.

In his Statement of Errors, Plaintiff argues that the ALJ erred: (A) in adequately discussing the medical evidence of record; (B) in determining Plaintiff's RFC; and (C) in

analyzing the two vocational experts' testimony.[4] Doc. 8. Having carefully reviewed the voluminous administrative record and the parties' briefs, and also having carefully considered the ALJ's analysis leading to the non-disability finding here at issue, the Court finds the ALJ carefully and reasonably reviewed the record, appropriately considered the medical evidence at issue, accurately determined Plaintiff's RFC, and properly assessed the testimony of the vocational experts. Thus, as more fully explained herein, the Court finds the ALJ's decision supported by substantial evidence and recommends that the Court affirm the ALJ's non-disability finding for the period March 11, 2009 through October 25, 2010.

A. **Medical Source Opinions**

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists top the hierarchy. *Id*. "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id*. "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

---

[4] In his reply, Plaintiff, for the first time, argues that "the ALJ also erred by failing to find that Mr. Gleason meets Listing 1.02A, Major dysfunction of a joint(s) in combination with his obesity." Doc. 12 at PageID 1169. By failing to present this argument in his Statement of Errors, the Court finds such argument waived. *See Dyamond v. Comm'r of Soc. Sec.*, No. 3:13-cv-117, 2014 WL 294464, at *2 (S.D. Ohio Jan. 27, 2014) (stating that "[f]ailure to raise an issue in the Statement of Errors constitutes waiver of any additional claim") (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001)). Assuming, *arguendo*, that the Court could consider this argument, the ALJ's analysis with regard to Listing § 1.02A is supported by substantial evidence. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (stating that "'even if there is substantial evidence in the record that would have supported an opposite conclusion[,]" the Court must give deference to ALJ's decision if it is supported by substantial evidence) (citation omitted).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 385 (6th Cir. 2013) (citation omitted) (alterations in original). This requirement is known as the "treating physician" rule. *Blakely*, 581 F.3d at 406 (citation omitted). Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2); *see also Blakely*, 581 F.3d at 406. Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakely*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.*

Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of

8

examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406; *see also* 20 C.F.R. § 404.1527(c).  In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]"  *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

The Court acknowledges that an ALJ is not required to accept a physician's conclusion that his or her patient is "unemployable."  Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "give[n] any special significance."  20 C.F.R. § 416.927; *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (stating that "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician").  However, "[t]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference."  *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

In his first assignment of error, Plaintiff argues that the ALJ "failed to properly analyze the treatment notes and opinions from Compassionate Care, Wilson County Hospital, and [the] Shelby County Counseling Center."  Doc. 8 at PageID 1129.  However, Plaintiff points to no specific opinion rendered by any of these sources which the ALJ was required to give controlling weight.  *Cf. Stroud v. Comm'r of Soc. Sec.*, 504 F. App'x 458, 460 (6th Cir. 2012) (concluding that descriptions of plaintiff's "symptoms, diagnoses, and prescriptions" were not "opinion[s] to be given controlling weight").

Further, Plaintiff points to certain Global Assessment of Functioning ("GAF") scores and argues that the ALJ failed to specifically mention these scores and failed to analyze the weight such scores should be given.[5] However, as stated by the Sixth Circuit, no "statutory, regulatory, or other authority require[s] the ALJ to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (citation omitted). Thus, "Sixth Circuit law is clear that there is no requirement for the ALJ to either specifically reference a plaintiff's GAF scores or to give a reason for not doing so." *Farley v. Colvin*, No. 2:11-0123, 2013 WL 5727389, at *10 (M.D. Tenn. Oct. 21, 2013); *see also Puterbaugh v. Colvin*, No. 3:12cv00031, 2013 WL 3989581, at *14 (S.D. Ohio Aug. 2, 2013) (finding that "the ALJ was not required to assign any weight to . . . treatment notes or GAF scores"); *Jones v. Colvin*, No. 09C7645, 2013 WL 1407779, at *14 (N.D. Ill. Apr. 8, 2013) (stating that "neither the Social Security regulations nor case law requires an ALJ to determine the extent of an individual's disability based entirely on his GAF score") (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

---

[5] GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV"). It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r of Soc. Sec.*, 61 F. App'x 191, 194 n.2 (6th Cir. 2003). A GAF of 31-40 indicates "[s]ome impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (*e.g.*,…avoids friends, neglects family, and is unable to work)." DSM-IV at 34. A GAF score of 41-50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Id*. A GAF score of 51-60 is indicative of "[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *Id*. A GAF score of 61 to 70 indicates "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia)" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." *Id*. A GAF score of 71 to 80 indicates "no more than slight impairment in social, occupational, or school functioning (*e.g.*, temporarily falling behind in schoolwork)." *Id*.

Finding no merit to Plaintiff's first assignment of error, the undersigned recommends that it be overruled.

### B. RFC Finding

Plaintiff also argues that the ALJ erred in analyzing his RFC. A person's RFC is the most that individual can do despite all physical and mental limitations. 20 C.F.R. § 416.945(a)(1). An ALJ determines a claimant's RFC "based on all the relevant evidence in [the claimant's] case record," including statements about what the claimant can do "provided by medical sources" and "descriptions and observations of [the claimant's] limitations from [his or her] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by [his or her] family, neighbors, friends, or other persons." 20 C.F.R. § 416.945(a)(3).

Here, Plaintiff cites to no medical source statements specifically describing any disabling limitations before October 25, 2010. Instead, Plaintiff points only to statements by examining physician Damian Danopulos, M.D., made on or about March 11, 2009, that "Plaintiff's work-related activities [are] restricted considerably [by] his unusual morbid obesity which . . . does not allow him to move around properly plus his left knee early arthralgias." PageId 422. Dr. Danopulous also found that Plaintiff's "restrictive lung disease and sleep apnea are additional problems." *Id*. As the ALJ correctly found, Dr. Danopolous never opined that Plaintiff was disabled prior to October 25, 2010, *see* PageId 81, and nothing in Dr. Danopolous's report indicates that Plaintiff has specific limitations exceeding those set forth by the ALJ in her decision. PageID 417-22.

Instead, the medical source statements relied upon by the ALJ that set forth specific physical limitations reveal that Plaintiff could perform sedentary work before October 25, 2010.

11

*See* PageID 81-84.  Accordingly, substantial evidence in the record supports the ALJ's RFC finding.  "'[E]ven if there is substantial evidence in the record that would have supported an opposite conclusion[,]" the Court must give deference to ALJ's decision if it is supported by substantial evidence.  *Blakely*, 581 F.3d at 406 (citations omitted).  "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."  *Id*. (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

Finding substantial evidence supporting the ALJ's RFC finding, the undersigned recommends that Plaintiff's argument in this regard be overruled.

    **C.**    **Vocational Experts**

Finally, Plaintiff argues that the ALJ erred in analyzing the testimony of the two vocational experts relied upon by the ALJ, William Brauning and Brian Womer.  Both vocational experts testified before the ALJ -- in response to questions posed by Plaintiff's attorney during the administrative hearings -- that employers would not accommodate an individual who required assistance from others in ambulating around the workplace, including assistance using the restroom during the workday.  PageID 116-19, 140-41.  Plaintiff argues that the ALJ erred in not finding him disabled prior to October 25, 2010 on the basis that employers would not accommodate such requests for assistance.

Plaintiff, however, cites no medical sources opining that he required help from others to use the restroom or in moving around the workplace before October 25, 2010.  Plaintiff does note his own testimony during administrative hearings that his wife assists him in putting on his pants in the morning; that he requires assistive devices to ambulate; and that he needs the assistance of others in using a bedside commode.  PageID 106, 112.  However, the ALJ

reasonably found Plaintiff's statements in this regard "inconsistent" and "not entirely credible," PageID 80-81, a specific finding Plaintiff does not challenge on appeal.[6] In the absence of any credible evidence concluding that Plaintiff required individual assistance from others in the workplace, substantial evidence supports the ALJ's hypothetical questions to the vocational experts.

Finding no error in the ALJ's assessment of the vocational experts' testimony, the undersigned recommends that Plaintiff's alleged error in this regard be overruled.

### IV.

For the foregoing reasons, the Court finds Plaintiff's assignments of error unmeritorious, and further finds the ALJ's non-disability determination supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found supported by substantial evidence, and **AFFIRMED**; and

2. This case be **CLOSED** on the docket of this Court.

Date:   July 25, 2014                              *s/ Michael J. Newman*
                                                   Michael J. Newman
                                                   United States Magistrate Judge

---

[6] Even if Plaintiff preserved any error concerning the ALJ's credibility finding, substantial evidence supports the ALJ's credibility analysis. Significantly, in finding Plaintiff's statements concerning his need for assistance not credible, the ALJ pointed to a report from October 25, 2010 stating only that Plaintiff's wife "help[s] him up into the bed." PageID 81, 524. Further, the ALJ noted that the purported need for an individual to assist with all of Plaintiff's needs inconsistent with Plaintiff's testimony that "he ambulates with an assistive device to get to the kitchen and can cook for himself." PageID 81. Again, Plaintiff does not challenge the ALJ's findings in this regard. The ALJ, and not this Court, "evaluate[s] the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted). Notably, "[c]onsistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers*, 486 F.3d at 248.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).